UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 3:03CR00032(PCD) |
| GARY MILLS | : | September 20, 2006 |

### GOVERNMENT'S MOTION AND MEMORANDUM
### RE: ADMISSIBILITY OF DEFENDANT'S STATEMENTS

The Government respectfully moves this Court for an order, finding that statements made by the defendant Gary Mills to detectives from the New Haven Police Department the day before he was arrested and arraigned on state charges are admissible in the trial of this case.  The statements were previously suppressed based on the district court's finding (Squatrito, J.) that the statements were taken in violation of  the defendant's sixth amendment right to counsel in his state case.  The court found that the defendant's right to counsel had attached – prior to his arrest and arraignment – when the state prosecutor signed a cover-sheet information as part of the application for an arrest warrant.  Because the statements purportedly were taken in violation of the defendant's right to counsel in the state case, Judge Squatrito held that they could not be used as evidence in the federal case.

After Judge Squatrito's order was issued and after the case was transferred to this Court, the Connecticut Supreme Court stated definitively when the sixth amendment right to counsel attaches in Connecticut state cases.  In State of Connecticut v. Pierre, 277 Conn. 42, 2006 WL 176944, *24 (Conn.), the court held that the mere signing of an information by a prosecutor – which is what happened here before Mills was interviewed by detectives – does *not* trigger the protections of the sixth amendment right to counsel.  "Rather, it is the state's decision to move

forward with the prosecution of the crimes charged in the information document, by arraigning the suspect and filing the information with the court . . . that trigger[s] a defendant's right to counsel under the sixth amendment." Id.   The state supreme court in Pierre discussed Judge Squatrito's suppression order in this case and stated as follows: "To the extent that [the district court] concluded that the sixth amendment right to counsel attaches in Connecticut upon the signing of an information by the state, we disagree." Id. at *25.  Given that state law governs whether Mills' sixth amendment right to counsel was triggered in the state case, see, e.g., United States v. Pace, 833 F.2d 1307, 1312 n.3 (9th Cir. 1987), the Pierre decision is controlling authority on that point.[1]

Mills was arrested and arraigned on June 19, 2002, the day *after* he made statements to the detectives.  Accordingly, his sixth amendment right to counsel had not yet attached and was not violated, and his statements are admissible against him.

Further legal and factual support for the Government's motion are set forth below.

## I.     BACKGROUND[2]

On the night of June 13, 2002, New Haven Police Officer Robert Fumiatti was shot and critically wounded in the Hill Section of New Haven.  A gun was found at the scene of the shooting, and an investigation into that gun was conducted.  Police traced the serial number on the gun and determined that one Michael Rice was the registered owner.  Rice was interviewed

---

[1]     The state court admitted that its guidance on the issue of when the sixth amendment right to counsel is triggered had not been addressed with specificity prior to the Pierre decision, and thus, prior to Judge Squatrito's suppression order in this case.  See 2006 WL 176944, *24.  This Court, therefore, now has a definitive word from the state supreme court on state procedural law that was lacking at the time of Judge Squatrito's decision.

[2]     The facts pertinent to a decision on this motion are not in dispute.

and admitted to authorities that he had given the gun to the defendant Gary Mills, a/k/a "G Knocker," in exchange for crack cocaine.

Based on the information provided by Rice, a detective applied for a warrant for the arrest of Mills on state gun charges. The affidavit in support of the warrant was reviewed by a state prosecutor on June 17, 2002, and she signed a cover-sheet information as part of the arrest warrant application on that same day. A state judicial officer also signed the warrant on June 17, 2002.

At the time of the shooting, Mills was incarcerated on a state drug charge unrelated to the shooting of Officer Fumiatti and the gun used in that shooting. Detectives sought Mills' consent for an interview, and he agreed. The interview took place on June 18, 2002. The detectives asked Mills about Michael Rice, and he confirmed that he knew Rice from his neighborhood and identified Rice's photograph on a photoboard the detectives showed him. Although he denied taking any guns from Rice, Mills told how Rice was from the suburbs and would come to the defendant's inner city New Haven neighborhood to buy drugs (but not from the defendant), how he had lent money on many occasions to Rice before, and how Rice would in turn give him items as collateral in return for the cash loaned by the defendant.[3]

The detectives did not arrest Mills on the day of the interview. Thus, as of June 18, 2002 when Mills made statements to the police, the arrest warrant had not been executed.

The next day, June 19, 2002, Mills was transported to state court. The arrest warrant was

---

[3] Arnold Bell has been convicted of both state and federal crimes relating to the shooting of Officer Fumiatti. The Government's evidence in this case shows that, after receiving the gun from Rice, Mills sold it to Arnold Bell in exchange for crack cocaine just after Bell was released from federal imprisonment and some months before the shooting.

3

executed, and Mills was arraigned on state gun charges.  A short form information was filed with the court, and counsel was appointed to represent Mills on the state gun case.

On February 18, 2003, a federal grand jury returned an indictment charging Mills with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  His federal counsel filed a motion to suppress the statements made by Mills on June 18, 2002 to the New Haven police detectives on the following grounds: (1) that the statements were obtained while he was in custody and in violation of his Miranda rights; (2) that his statements were involuntary because he was "tricked" by the detectives; and (3) that his statements were obtained in violation of his sixth amendment right to counsel.[4]  After an evidentiary hearing, the district court denied all claims except the sixth amendment claim.  As noted above, Judge Squatrito suppressed the statements due to his holding that the defendant's right to counsel was triggered in the state prosecution by the signing of the information by the prosecutor.[5]

The Government filed a motion for reconsideration, arguing primarily that the sixth amendment is "offense-specific" and that, under "dual sovereignty" principles, state and federal offenses cannot be considered to be the same offense.  Accordingly, even assuming attachment of the defendant's right to counsel for purposes of the state gun charges at the time that he was interviewed by local police, there were no federal charges pending at that time, and therefore the

---

[4]    No claim of a sixth amendment violation was made in the state case.

[5]    In his ruling, Judge Squatrito used the terms "signed," "issued," and "filed" interchangeably when discussing the information signed by the prosecutor.  The fact is that the information had been signed at the time of the interview but had not been filed with the court, which happens at the time of the defendant's arraignment.  Thus, the import of his ruling was that the mere signing of an information by a prosecutor was sufficient to trigger a defendant's sixth amendment right to counsel.

4

defendant's right to counsel had not yet attached as to the later-charged federal gun charge. Judge Squatrito denied the Government's reconsideration motion, and the Government took an interlocutory appeal. On appeal, the only issue addressed was whether, assuming the defendant's sixth amendment right to counsel was violated in the state case, the statements should be suppressed in a federal case that was not charged at the time of the violation. The Second Circuit affirmed the district court. The issue of when the sixth amendment right to counsel was triggered in the state case was *not* addressed by the Second Circuit, and the Government expressly reserved the right to argue to the district court on remand that Mills' sixth amendment right had not been violated in the state case, and, accordingly, that his statements are admissible at trial.

We now seek from this Court an order upholding the admissibility of statements made by Mills to detectives the day before he was arrested and arraigned on state charges.

## II.    APPLICABLE LAW

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "The Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Fellers v. United States, 124 S. Ct. 1019, 1022 (2004) (quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)); see also Kirby v. Illinois, 406 U.S. 682, 689 (1972) (same). The United States Supreme Court has long interpreted the sixth amendment right to counsel consistent with the purpose it serves: to guarantee the assistance of counsel when the accused is confronted with "both the intricacies of the law and the advocacy of the public prosecutor." United States v. Ash, 413 U.S. 300, 309 (1973). The right to counsel

5

> embodies a realistic recognition of the obvious truth that the
> average defendant does not have the professional legal skill to
> protect himself when brought before a tribunal with power to take
> his life or liberty, wherein the prosecution is presented by
> experienced and learned counsel.

Johnson v. Zerbst, 304 U.S. 458-462-463 (1938). Put another way, "the right to counsel exists to

protect the accused during trial-type confrontations with the prosecutor . . . ." United States v.

Gouveia, 467 U.S. 180, 190 (1984).

     In State of Connecticut v. Pierre, 277 Conn. 42, 2006 WL 176944, a case handed down

after Judge Squatrito's suppression order, the Connecticut Supreme Court addressed the precise

issue that exists in this case. The defendant in Pierre was in a similar position to Mills. State law

enforcement officials responsible for the investigation of a murder presented an arrest warrant

application with an attached information to a state prosecutor. The prosecutor reviewed and

signed it, as did a state judge. A month later, the defendant was arrested out of state on that

warrant. He made statements to police at the time of his arrest and when he was being

transported back to Connecticut. Upon his arrival in Connecticut, he was arraigned, and the

information was filed at the time of his arraignment. The defendant moved to suppress the

statements he made post-arrest but before arraignment, and he cited Judge Squatrito's decision in

this case as support for his argument that the prosecutor's signing of an information in

conjunction with obtaining an arrest warrant marked the commencement of adversarial judicial

proceedings within the meaning of the sixth amendment.

     The Connecticut Supreme Court categorically rejected the defendant's contention and

stated as follows:

> The defendant argues that once the state's attorney signed an

information in conjunction with obtaining a warrant for his arrest, the state had committed itself to prosecute.  We are not persuaded. *To the contrary, we conclude that it is not simply the signing of the information document that triggers the protections of the sixth amendment.  Rather, it is the state's decision to move forward with the prosecution of the crimes charged in the information document, by arraigning the suspect and filing the information with the court, that signifies the state's commitment to prosecute* as well as the initiation of the adversary judicial proceedings that trigger a defendant's right to counsel under the sixth amendment.

Id. at *24 (emphasis added).

Indeed, the court noted that it had previously found that an actual arrest and extradition hearing had not been viewed as a commitment to prosecute within the meaning of the sixth amendment right to counsel, see, e.g., State v. Falcon, 196 Conn. 557, 562, 494 A.2d 1190 (1985).  Thus, "the signing of an information attached to an arrest warrant hardly can be considered definitively prosecutorial and adversarial in nature.  Indeed, the arrest warrant and information are prepared largely without the defendant's knowledge and it is not until the defendant is formally charged in open court at arraignment that he enters a plea, is faced with an adversarial judicial process, and the prosecution begins."  Pierre, supra, at *24.

The Pierre decision makes it abundantly clear that, in a Connecticut state case, the sixth amendment right to counsel attaches after the defendant has been arrested and when he has been arraigned; it is then that adversarial judicial proceedings commence.  At the time Mills made the statements to local detectives, he had not even been arrested, much less arraigned.  There is no question that his arrest and arraignment took place the day after his interview with detectives.  Given that the issue here is when Mills' sixth amendment right to counsel commenced in his state case, the Pierre decision is controlling authority, see United States v. Pace, 833 F.2d at 1312

7

n.3, and it fully supports the admission of Mills' statements.

## III.    CONCLUSION

For these reasons, the Government respectfully submits that, under controlling state law, as articulated more clearly after Judge Squatrito's suppression order was issued, there was no sixth amendment violation when local detectives conducted a voluntary interview with Mills the day before he was arrested and arraigned.  The Government therefore requests an order from this Court, holding that the defendant's statements are admissible as evidence against him at trial.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


KAREN L. PECK
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct14959
157 Church Street
New Haven, CT 06510
(203) 821-3700

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I caused a copy of the foregoing Motion and Memorandum to be sent by first-class mail, postage prepaid to the following on this \_\_\_ day of September 2006.


Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 061090


         _____

         KAREN L. PECK
         ASSISTANT UNITED STATES ATTORNEY