UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| VS. | : | NO. 3:03CR32 (PCD) |
| GARY MILLS | : | JANUARY 17, 2007 |

### DEFENDANT'S MEMORANDUM RE: SENTENCING

**I.  Background**

The defendant pled guilty on October 19, 2006, to a one count indictment charging him with Being a Felon in Possession of a Firearm in violation of 18 U. S. C. §922(g)(1). The indictment to which he pled charges that he possessed the weapon from on or about December 2001 to on or about February 2002 in New Haven, Connecticut.

**II.  Applicability of ACCA**

The primary issue to be resolved at sentencing is whether or not the defendant is subject to the far lengthier prison terms required by the Armed Career Criminal Act ("ACCA") of 18 U.S.C. §924(e) or to the maximum statutory penalty of ten years and the lower guidelines pursuant thereto of 18 U.S.C. §922(g). To be subject to the ACCA, the defendant must, prior to the commission of the instant offense, have "three prior convictions by any court...for a violent felony or serious drug offense, or both..." 18 U.S.C. §924(e)(1). The defendant does not contest the fact that prior to December 2001 he had two prior convictions for Sale of Narcotics. *PSR, ¶41; PSR, ¶45.* The issue now before this court is whether he has the third predicate felony and whether

his escape conviction of 1998, referred to in Paragraph 51 of the pre-sentence report, is a "violent felony" as defined by the ACCA statute. It defines a "violent crime" in the alternative. The predicate felony for which the defendant has been convicted must:

>   (i)   [have] an element, the use, attempted use, or threatened use of physical force against the person of another; or
>
>   (ii)  is burglary, arson, or extortion, or involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

18 U.S.C. §924(e)(2)(B)(i)(ii) (emphasis added).

The "escape" for which Mr. Mills was convicted in 1998 involves a violation of Connecticut General Statute §53a-169. This statute has been enumerated as "Escape in the First Degree". As will be shown, some of the conduct which it proscribes is well beyond a generic escape or what is generally considered escape under common law or common parlance. For example, the statute makes an escape not only to break out of jail or to leave a "halfway house", but to "escape" from a "community residence" to which the person is transferred pursuant to "Section e of 18-100", the so-called transitional supervision program. Section 53a-169(a)(2). While the Government is correct when it points out that the cases are legion from many circuits, that a walk away from a halfway house constitutes an escape, the defendant does not know of a case where a person leaves a private residence where he has been transferred by the Department of Correction and a Court has held this to be a violent felony. Connecticut General Statute §18-100(e) permits the Department of Correction to transfer "any person" from a correctional institution to a "private

residence".  C. G. S. §18-100(e).

Thus, the question is does the Connecticut escape statute, which, to the defendant's knowledge, has not been interpreted by any <u>reported</u> decision, as to the ACCA, is a crime of violence.  Obviously, the statute does not involve the "use or attempted use or threatened use of physical force" or isn't one of the enumerated felonies of "burglary, arson, or extortion or the use of explosives".  18 U. S. C. §924(e)(2)(B)(i)(ii).  If this statute is a crime of violence, this Court will have to find that the conduct set forth in this statute "involves conduct that represents a serious potential risk of physical injury to another".  18 U.S.C. §924, id.  Using the categorical approach suggested by <u>Taylor v. United States</u>, the Court should focus solely on the "fact of conviction and the statutory definition of the Connecticut escape statute" rather the underlying facts of the particular offense.  <u>Taylor v. United States</u>, 495 U.S. 475 (1990).  As pointed out, the Connecticut escape statute involves conduct which is generally held not to be an escape such as simply walking away from a private residence where one has been assigned by the Department of Correction.  Even if the Court should adopt the reasoning of the Second Circuit in <u>United States v. Jackson</u>, as suggested by the Government, the Connecticut statute is simply far more expansive than the Florida statute analyzed in that case.  <u>United States v. Jackson</u>, 301 F.3d 59 (2d Cir. 2002).  The Florida statute involved the walk away from a Department of Correction work site.  Such a location is analogous to a halfway house which has been repeatedly held by some other Circuits to constitute a crime involving "the potential risk of physical injury to another".  But the private residence, as

-3-

encompassed by the Connecticut escape statute, is a considerably different situation than a halfway house or a work site. A private residence does not involve any institutional rules or restrictions or the presence of quasi-Government officials watching microscopically the everyday conduct of the parolee or releasee. Under this statute, a person leaves his own private residence at home in the morning like everyone else and if he simply fails to report or leaves that residence, he commits the crime of escape. Though Connecticut has described this conduct for somebody like Mr. Mills in 1997 as an "escape", it is really nothing more or less than what would generally be called a violation of parole. Parolees live in private residences with some restrictions placed upon them by the Department of Correction. If they abscond or fail to report, they are charged with a parole violation. It has never been suggested in any court that such conduct, that is violation of parole, constitutes an escape and yet, this very same conduct under the present statute, could be deemed an escape because it is proscribed under a statute with the label "escape" before it. Finally, Jackson did not involve a statute as expansive as the Connecticut escape statute nor did it involve an interpretation of the Connecticut escape statute at all.

      The Government also cites the Second Circuit decision of United States v. Rivera in its objection letter to the probation officer. United States v. Rivera, CR04-3769(L) (2d Cir. 4-6-05). This case is a Summary Order which specifically states that it "may not be cited as precedential authority to this or any other court". Assuming the Second Circuit language is binding upon this Court, the defendant requests that Court totally disregard the case and the reasoning therein in rendering a decision.

-4-

Furthermore, that case does not involve the issues raised by the defendant now before this Court nor does it even suggest that the statute involved is the Connecticut escape statute and not some statute from another state. United States v. Rivera, id.

Should the Court believe that the Connecticut escape statute encompasses conduct which is both violent and non-violent, it can use the modified categorical approach set out by Shepard v. United States to determine if Mr. Mills' conviction is a crime of violence. Shepard v. United States, 544 U. S. 13 (2005). As can be seen from the arrest warrant, Mr. Mills did not walk away from a jail or even a halfway house. Under the transitional supervision program, he was assigned to a private residence in Somers, Connecticut, and left and did not report shortly thereafter. His situation, therefore, is totally analogous to that of a parolee and not an inmate in custody. Despite the fact the Department of Correction may fictitously assume under the statute that he is in the custody of the Department of Correction, the truth is there was no restraints upon him at all or at least no more restraints than a typical parolee. The situation, thus, differs markedly from that of someone in a halfway house or working at a work site.

The defendant asks the Court to adopt the reasoning of the Ninth Circuit in United States v. Piccolo, 441 F.3d 1084 (9th Cir. 2006). Piccolo absconded from a non-secure halfway house and was charged under the federal escape statute. After pleading guilty, this conviction was used by the Government to claim that he was a career criminal under Section 4B1.1 of the guidelines. Piccolo claimed that a walk away escape is not a crime of violence. Id at 1085. Using the categorical analysis,

the Ninth Circuit found that a walk away escape was not a crime of violence. Id at 1087. "We think that the circumstances apparent in a walk away escape are of an entirely different order of magnitude than escapes from jails or prisons. Residents of halfway houses have certain privileges of ingress and egress, do not live behind concrete walls and barbed wire, and are not under constant surveillance by armed guards." Id at 1088. The Court rejected the "powder keg approach" which other Circuits have utilized to find escape falls into a crime of potential violence. Id at 1089. It is also significant that Mr. Mills, like Mr. Piccolo, had a significant criminal history at the time that he absconded, but as the Ninth Circuit has pointed out, the defendant's "criminal history has no bearing on the question whether the escape is a crime of violence, though it could be a factor in considering the proper sentence under the appropriate sentencing guidelines range". Id at n.8. See also, United States v. Golden, 466 F.3d 612 at 615-616 (7th Cir. 2006, Rovner, J. concurring). As Piccolo pointed out, it is pure speculation that there is a risk to anyone by somebody either walking away from a halfway house or even more so from simply leaving a private residence assigned to him by the Department of Correction as a place to complete one's confinement. United States v. Piccolo, supra.

### III.     Departures and Non-Guideline Sentence

The low end of Mr. Mills' guidelines is 15 years and 8 months. The mandatory minimum, if he is an Armed Career Criminal, is 15 years. Should the Court deem him an Armed Career Criminal, he respectfully requests that the sentence be no more

than 15 years.  The Court can do this either as a departure under Section 5 of the Guidelines or as a non-guideline sentence under Section 3553(a).  As can be seen from the pre-sentence report and a December 26, 2006, article from The Pawtucket Times, Mr. Mills has engaged in extraordinary rehabilitation during the time of his confinement.  He has been discipline free, described as a "model prisoner", and is a "star" of the "Stay on the Right Path" educational program for young adults.  This is not what prisoners ordinarily do and shows truly that Mr. Mills has gone through extraordinary rehabilitation.

Additionally, the Court can depart because of the profound effect upon Mr. Mills during his formative years by the death of his sister and godfather through suicide.  The Court does not need the aid of a psychologist to know that these incidents had an extremely negative effect upon Mr. Mills during the formative years of his life.

Finally, if the Court should reject the defendant's argue that he is not an Armed Career Criminal, the Court should find that only by the narrowest definition does he come within that category.  Even the Government, hopefully, will not claim that this is a typical "crime of violence" because he is only narrowly within the terms of the Armed Career Criminal statute.  The Court can consider that as a basis to depart to the lowest level possible or 15 years.

Additionally, Mr. Mills had to serve his previous state sentence with a detainer because of the federal indictment.  During this period of time, the U. S. Attorney's Office was moving to reconsider Judge Squatrito's decision on the Motion to Suppress, appealing that decision to the Second Circuit, seeking a rehearing en banc,

and delaying the trial of Mr. Mills' case while it determined whether it would seek certiorari from the U. S. Supreme Court. For much of this time, the pending federal charge was lodged as a detainer against Mr. Mills who was serving his state sentence. This detainer caused Mr. Mills to serve his state sentence on far more restrictive conditions than he would have had if it not been placed against him at the Cheshire jail. He was denied certain benefits, work release, and other conditions that would normally be available to inmates who did not have such a detainer.

For any of the above reasons, or a combination thereof, the defendant asks that the Court depart downwards to the mandatory minimum of 15 years or impose a non-guideline sentence pursuant to 18 U. S. C. §3553(a) of 15 years.

          Respectfully submitted,

          DEFENDANT, GARY MILLS


          By:_____
              Richard S. Cramer
              250 Hudson Street
              Hartford, CT 06106
              Tel. (860) 560-7704
              Federal Bar No. ct00016
              Email: cramer@snet.net

## CERTIFICATION

      THIS IS TO CERTIFY that a copy of the foregoing was hand-delivered this 17th day of January 2007 to:

| | |
|---|---|
| John Durham | Paul Collette |
| Assistant U. S. Attorney | U. S. Probation Office |
| 157 Church Street | 157 Church Street |
| New Haven, CT 06510 | New Haven, CT 06510 |

                                                                         _____
                                                                         Richard S. Cramer